THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:13-cv-00129-MR-DLH

| | |
|---|---|
| ROBERT S. GAMBUTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

**I. PROCEDURAL HISTORY**

The Plaintiff Robert Gambuti filed an application for disability insurance benefits on October 7, 2010, alleging that he had become disabled as of June 1, 2008. [Transcript ("T.") 180-181]. The Plaintiff's application was denied initially. [T. 127]. The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which occurred on November 10, 2011. [T. 36-91]. On November 22, 2011, the ALJ issued an unfavorable decision. [T. 22-35]. On June 17, 2013, the Appeals Council

denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 5-10]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

2

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education, or work experience. Id. Fourth, if the impairment does not meet

3

the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## V. THE ALJ'S DECISION

On November 22, 2011, ALJ Gonzalez issued a decision denying the Plaintiff's claim. [T. 22-35]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2014 and that he had not engaged in substantial gainful activity since October 28, 2009. [T. 27]. The ALJ then found that the medical evidence established the following severe impairments: status-post partial left knee replacement and lumbar disc bulges. [T. 27]. The ALJ determined that none of Plaintiff's impairments met or equaled a listing. [T. 29].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) "except that he suffers from

4

nonexertional limitations that preclude more than occasional crawling, crouching, stooping and the climbing of stairs or ladders." [T. 29]. The ALJ found that the Plaintiff was capable of performing his past relevant work as a 911 call dispatcher, and that he was not under a disability. [T. 34].

## VI. DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that "[t]he ALJ erred by evaluating and failing to weigh the medical opinion evidence from Dr. Jones, thereby failing to support the residual functional capacity determination by substantial evidence"; (2) that "[t]he ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining Plaintiff's credibility"; and (3) that "[t]he ALJ's Step 4 determination is unsupported by substantial evidence." [Doc. 13]. The Court will address each of these assignments of error in turn.

### A. The ALJ's Assignment of Weight to Dr. Jones' Opinion

The Plaintiff claims that the ALJ erred in failing to evaluate and weigh the opinion of Dr. Jones. [Doc. 13]. Particularly, the Plaintiff argues that

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

5

proper consideration of Dr. Jones's opinions would have resulted in a more restrictive RFC determination. [Doc. 13 at 11].

An ALJ must evaluate every medical opinion received in the record, regardless of its source. 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment [ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In evaluating the weight of a medical source, the ALJ must consider certain factors including: the examining relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical source, the consistency of the medical source, the specialization of the provider, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1–6).

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Thus,

6

an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also Rogers v. Barnhart, 204 F. Supp. 2d 885, 893 (W.D.N.C.2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records").

Here, the ALJ adequately assessed Dr. Jones's opinions. He noted Dr. Jones's findings, as follows:

> In December 2009, [e]xamination revealed normal reflexes and sensation to the lower extremities and the claimant successfully performed heel walking and toe walking . . . [and] moderate patellofemoral crepitus and full range of motion to both the claimant's knees. There was no muscle atrophy, joint effusion, or ligamentous instability. The doctor felt that the claimant had not yet reached maximum medical improvement, as he was a candidate for knee replacement surgery. He felt that the claimant could work so long as he avoided running, squatting, bending, climbing stairs and ladders or prolonged weight bearing.
>
> Upon further evaluation in December 2010, Dr. Jones indicated that the claimant had undergone knee replacement surgery, but still had not yet reached maximum medical improvement. He believed that the claimant maintained a moderate to marked disability and that he could work if he avoided prolonged running, squatting, frequent bending, climbing stairs and ladders or lifting and carrying more than 10 pounds.

7

[T. 28]. The ALJ then discussed the findings of Dr. Newman and Chiropractor Donohue, and afforded little weight to both of their findings. [T. 28, 32]. The ALJ noted the following regarding Mr. Donohue's opinion:

> [It] is inconsistent with examinations from Drs. Handago, Moultrie and Mayman, as well as the findings from independent examination, which fail to reveal findings of severe and persistent pain and significant sensory disturbance of the back and extremities. The objective clinical findings have not shown evidence of muscle atrophy or significant motor, sensory or reflex deficits, which would be anticipated in light of the degree of limitation reported.

[T. 32]. Thus, the ALJ relied on the findings of Suraj Malhotra, M.D., findings which were "fairly mild." [Id.].

Upon consideration and discussion of the Plaintiff's evidence of record, the ALJ determined that the Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except that he suffers from nonexertional limitations that preclude more than occasional crawling, crouching, stooping and the climbing of stairs or ladders." [T. 29]. Although the ALJ did not specifically discuss how he weighed Dr. Jones's opinions and why he failed to include all functional limitations noted by Dr. Jones in the RFC determination, any such error was rendered harmless by the ALJ's consideration and discussion of substantial medical evidence of record in this case. Indeed, the ALJ's RFC determination adopted many of

8

Dr. Jones's findings with respect to the Plaintiff's functional limitations. For example, the ALJ's noted restrictions encompassed Dr. Jones's findings concerning the Plaintiff's ability to squat, bend, and climb stairs and ladders. [T. 405, 409]. The ALJ failed to note restrictions on the Plaintiff's ability to lift, stand, and walk, but he explained why he gave only little weight to Chiropractor Donohue's findings with regard to the same restrictions. [T. 32]. The ALJ noted that Chiropractor Donohue is not a medical doctor and is thus not entitled to treating physician deference. [Id.]. The ALJ distinguished his limitations findings from those reflected in parts of the Plaintiff's record, as he noted that "the overall medical evidence is not consistent with the presence of debilitating cervical and lumbar impairments" and that "progress notes indicate that he was in no acute distress and that he displayed fairly normal range of motion in all major joints of the extremities." [T. 33]. Thus, the ALJ's determination of the Plaintiff's RFC was supported by substantial evidence of record in this case.[2]

    Thus, the Plaintiff's first assignment of error is without merit.

---

[2] Although the Plaintiff argues that the ALJ should have required a vocational expert's testimony regarding the erosion of the Plaintiff's occupational base, such an expert was not required due to the ALJ's findings based upon evidence of record in this case.

9

## B. The ALJ's Credibility Determination

The Plaintiff next argues that "[t]he ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining Plaintiff's credibility." [Doc. 13].

As previously noted, it is not the task of this Court to make a new credibility determination in this case but rather to assess whether the ALJ followed the proper legal standard in his credibility determination. See Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). The ALJ's first step to weigh the credibility of a claimant's statement of pain and other symptoms is as follows:

> First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. § 404.1529(c)(1); Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996); Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006). If the ALJ finds that a claimant suffers such an impairment and that it could reasonably be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F.Supp.2d 590, 604 (E.D.N.C. 2010).

Adams v. Astrue, No. 1:11-cv-336, 2013 WL 609859, at *3 (W.D.N.C. Jan. 28, 2013) report and recommendation adopted, No. 1:11-CV-00336-MR-DLH, 2013 WL 603162 (W.D.N.C. Feb. 19, 2013). At the second step of

10

the process, the ALJ will consider other evidence of pain, including: 1) daily activities; 2) the location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, received for relief of pain or other symptoms; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3).

The Plaintiff first takes issue with the ALJ's mention that the Plaintiff noted that he had not been prescribed narcotic medication for his back and that he only used such medication for his knee sporadically. [Doc. 13 at 15]. The Plaintiff testified at his hearing that his hydrocodone was only prescribed for his knee pain. [T. 46]. Thus, this argument has no merit.

The Plaintiff next takes issue with the ALJ's note that "the limited use of narcotic medication undermines the [Plaintiff's] statements purporting to a high level of chronic pain." [T. 33]. The Plaintiff argues that he did not want to use too much narcotic medication for fear of addiction, that narcotic medication caused intimacy issues with his wife, and that he could not use pain medication due to gastrointestinal problems. The Plaintiff had testified, however, that he was "self-medicating" himself, as he had "amassed some of the pain medicine during the course of [his] treatment"

11

by "just renew[ing] the prescription and then sav[ing] some." [T. 45]. Thus, this argument is without merit.

Further, the Plaintiff argues that the ALJ improperly considered the Plaintiff's testimony "that he visited the chiropractor less frequently since the number of chiropractic visits allowed by workman's compensation had been reduced and since he did not want to pay for additional visits out of pocket or through his own health insurance." [T. 33]. The ALJ noted: "It is hard to believe that the same [Plaintiff] who retains the means and resources to continue treatment would fail to do so if he were experiencing the debilitating symptoms reported." [Id.]. The Plaintiff notes, however, that independent examiner Daniel Newman, D.C. stated:

> Per the Workers Compensation Treatment Guidelines December 1, 2010, the treatment requested by [Chiropractor Donohue] would be considered chronic care and should be denied on that basis. It is noted in the medical treatment guidelines that 'there is no efficacy for chronic treatment manipulation several times a month for years and chronic treatment is not recommended.'

[Doc. 13 at 16, T. 423]. The Plaintiff testified that he had stopped treating his back as frequently because he "was the only salary paying all the bills." [T. 78]. The Plaintiff also testified, however, that he was "earning a nice salary per month and [had] health insurance" [T. 76] but was not getting more treatment for his back "probably . . . because I feel work should pay

12

for it because I got hurt at work." [T. 77]. Thus, the ALJ did not err in this regard.

Fourth, the Plaintiff argues that "the ALJ discredited Plaintiff's willingness to work on the basis he is still receiving compensation from the police department and Workers' Compensation." [T. 33-34]. The ALJ also noted that the Plaintiff worked as an emergency dispatcher for Orange County during part of the time he alleged disability. [T. 34]. The ALJ did not err in his mention of such facts, as it is the ALJ's responsibility to resolve conflicts in the evidence. Craig, 76 F.3d at 589 (4th Cir. 1996). The ALJ may consider a claimant's financial motivation causing an adverse credibility determination when other factors question the claimant's credibility. See Ramirez v. Barnhart, 292 F.3d 576, 581 n.4 (8th Cir. 2002). Thus, this argument is without merit.

Fifth, the Plaintiff argues that the ALJ improperly found his testimony regarding his ability to sit and stand as unsupported by the record. [Doc. 13 at 17]. The Plaintiff suggests that the opinions of Chiropractor Donohue, Dr. Jones, and Dr. Mazella highly support his testimony in this regard. [Id.]. The ALJ specifically found, however, that Chiropractor Donohue's and Dr. Jones's opinions about the Plaintiff's ability to sit and stand were inconsistent with the evidence of record in this case. [T. 32-33].

13

Additionally, Dr. Mazella did not make any findings about the Plaintiff's ability to sit and stand. [T. 464-65]. Thus, this argument has no merit.

Finally, the Plaintiff argues that the ALJ erred in finding that the Plaintiff's "extensive activities of daily living" undermined his credibility. The ALJ noted that the Plaintiff "watches television, lets the dog out, . . . has been to North Carolina on vacation, flew on an airplane on vacation, prepares meals at home, and sometimes attends meetings at a local volunteer firehouse where he once was a volunteer firefighter." [T. 34]. The Plaintiff has noted that he has restrictions on those daily activities that he can perform. [Doc. 13 at 17]. The ALJ properly considered the Plaintiff's daily activities as part of his credibility determination according to 20 C.F.R. § 404.1529(c)(3). The ALJ did not find that such activities rendered the Plaintiff conclusively able to work, but he did consider the Plaintiff's ability to perform such activities as a factor in his credibility determination.[3] Therefore, the ALJ did not err in making this consideration.

Thus, the Plaintiff's second assignment of error concerning the ALJ's credibility determination is likewise without merit.

---

[3] The Commissioner has noted that the Plaintiff's evidence of record indicates that he had other daily activities including making coffee, walking outside for a few minutes, [T. 58], going fishing with his father-in-law when he was in North Carolina, flying or driving to North Carolina several times per year [T. 59-61], and doing light dusting [T. 64].

## C. The ALJ's Step Four Determination

The Plaintiff finally argues that the ALJ erred in his Step Four analysis finding that the Plaintiff was capable of performing past relevant work as a 911 emergency call dispatcher. Specifically, the Plaintiff argues that the ALJ "did not meet the requisite detail required when inquiring to Plaintiff's past relevant work, particularly the strength, endurance manipulative ability, and mental demands of the work." [Doc. 13 at 18]. The Plaintiff had testified that he had difficulty meeting the mental demands of being a 911 call operator due to emotional hardship dealing with people on the phone after the death of his baby brother. [Id.].

At Step Four in the ALJ's analysis, the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. 20 C.F.R. §§ 404.1520, 416.920. According to Social Security Ruling 82-62, the ALJ must make particular considerations when assessing a claimant's past work:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. . . The claimant is the primary source for vocational documentation, and statements by

15

> the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work . . . The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.

SSR 82-62.

Here, the ALJ considered the Plaintiff's residual functional capacity based upon his medical evidence of record and found that the Plaintiff could perform his past relevant work as a 911 dispatcher. The ALJ noted that the Plaintiff's work as a 911 dispatcher consisted of answering incoming calls and dispatching emergency vehicles while entering information into the computer. The ALJ indicated that the Plaintiff "remained seated in a cubicle, but could sit and stand as needed." [T. 34]. Although the ALJ did not explicitly note the mental demands of the Plaintiff's past work, he had previously assessed the Plaintiff's mental conditions and had noted:

> While the claimant alleges limiting anxiety and depression, the evidence does not bear this out. Multiple examinations failed to show any indication of restrictions as a result of an emotional disturbance. No memory problems or indications of impaired concentration were indicated during examinations by treating physicians. Similarly, an independent mental status examination (Exhibit B1F) failed to elicit any findings consistent with a

> psychiatric condition which would interfere with the claimant's daily functioning.

[T. 32]. An evaluation of the ALJ's decision reveals that the ALJ followed SSR 82-62 and made findings of fact regarding (1) the Plaintiff's residual functional capacity, (2) the physical and mental demands of the Plaintiff's past job, and (3) whether the Plaintiff's residual functional capacity would allow him to return to his past relevant work. [Doc. 15 at 17]. There is no indication that a more detailed analysis of the Plaintiff's past relevant work would have rendered a different outcome in this case. Thus, any error made by the ALJ in this regard was harmless.

Therefore, the Plaintiff's third assignment of error is without merit.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; the decision of the Commissioner is **AFFIRMED**; and this case is **DISMISSED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 18, 2015

Martin Reidinger
United States District Judge